MARK L. MOSLEY, State Bar No. 136449
MELANIE SENGUPTA, State Bar No. 244615
MACKENZIE & ALBRITTON LLP
Emails:      mmosleyesq@gmail.com
             m.sengupta@mallp.com
155 Sansome Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 288-4000
Facsimile: (415) 288-4010

Attorneys for Plaintiff FRESNO MSA
LIMITED PARTNERSHIP, a California
limited partnership d/b/a
VERIZON WIRELESS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| FRESNO MSA LIMITED PARTNERSHIP, a California limited partnership d/b/a VERIZON WIRELESS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF FRESNO,<br><br>Defendant. | Case No. 1:22-at-494<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION; REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff Fresno MSA Limited Partnership, doing business as Verizon Wireless ("Verizon Wireless"), complains against defendant City of Fresno ("Fresno" or the "City"), and alleges as follows:

**I.     INTRODUCTION**

1. The City violated the Telecommunications Act of 1996 (the "TCA") by failing to act, within a reasonable period of time, on Verizon Wireless's application to place, modify, or

construct a personal wireless service facility within the City. Under 47 U.S.C. section 332(c)(7)(B)(ii), the City must "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time." The Federal Communications Commission ("FCC") issued an order establishing specific, presumptively reasonable timeframes under which a municipality must act on such requests to comply with Section 332(c)(7)(B)(ii). *In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14004-14005, ¶ 32 (Nov. 18, 2009) (the "*Shot Clock Ruling*"). In this case, the applicable "shot clock" deadline expired on February 28, 2022. The City has failed to act on Verizon Wireless's application, and has thus violated the TCA.

2. Verizon Wireless sought approval to place an 80-foot freestanding wireless facility, disguised as a pine tree, in a downtown neighborhood zone at 640 R Street in Fresno, California (the "Proposed Facility"). Verizon Wireless needs this facility to fill a gap in capacity and coverage for its services in the eastern downtown Fresno area and areas east of Highway 41, to meet the increased customer demand for voice and data usage, and to avoid compromising network accessibility and reliability.

3. The Proposed Facility has run a municipal, bureaucratic gauntlet of four public hearings with still no final action from the City. The Project Review Committee for District 3, a City committee which reviews entitlements in its district area to ensure neighborhood compatibility, voted to recommend approval of the Proposed Facility, and the City's Planning and Development Director subsequently approved it. The Huntington Park Condominium Village Board of Directors ("Huntington Park Condos"), who represent a residential condominium development north of the Proposed Facility, then appealed the Director's decision to the City Planning Commission. The Planning Commission held three hearings on the Proposed Facility. Consideration of the Proposed Facility had to be postponed twice due to lack of a quorum. The Planning Commission finally approved the Proposed Facility at the third hearing.

4. The District Councilmember for District 3 then appealed the Planning Commission's decision to the City Council. That appeal remains pending. As a result of these

procedural machinations, the City has yet to issue a final decision regarding Verizon Wireless's application.

5. Separate and apart from any federal remedies, California state law establishes that an application to site a wireless facility "shall be deemed approved" if a City "fails to approve or disapprove the application within a reasonable period of time in accordance with the time periods and procedures established by applicable FCC decisions." Cal. Govt. Code § 65964.1(a)(1).

6. Now, nearly a year after Verizon Wireless applied for a permit to install the Proposed Facility, the City has yet to issue a final decision. Because the deadlines imposed by federal law and applicable FCC decisions for the City to act on the applications for the Proposed Facility have expired, the Proposed Facility is deemed approved by operation of law pursuant to California Government Code Section 65964.1.

7. To redress these violations, Verizon Wireless seeks declaratory and injunctive relief directing the City to issue all necessary approvals for Verizon Wireless to build the Proposed Facility.

8. Verizon Wireless also respectfully requests expedited judicial review of these claims, including an expedited schedule for briefing and argument of motions for summary judgment. 47 U.S.C. § 332(c)(7)(B)(v).

## II.   JURISDICTION AND VENUE

9. This case arises under the Constitution and laws of the United States, including the Supremacy Clause, U.S. Const. Article VI, Clause 2, and the TCA.

10. The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the City is in this District and the acts or omissions giving rise to this action occurred in this District.

12. A statutory cause of action to challenge the untimeliness of a State or local government action (or lack thereof) on a permit for a wireless facility is expressly provided by 47 U.S.C. § 332(c)(7)(B)(ii).

13.  The statute also provides that "the court shall hear and decide such action on an expedited basis."  47 U.S.C. § 332(c)(7)(B)(v).

14. The court has supplemental jurisdiction over claims arising under California state law pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the claims over which the Court has original jurisdiction that they are part of the same case or controversy under Article III of the United States Constitution.

### III. INTRADISTRICT ASSIGNMENT

15. Assignment to the Fresno Division of this Court is appropriate pursuant to Local Rule 120(d) because the events or omissions which give rise to the claims asserted herein occurred in Fresno County.

### IV. THE PARTIES

16. Plaintiff is a California limited partnership and the local affiliate of a nation-wide provider of wireless telecommunications services.

17. Verizon Wireless is a "communications common carrier" (47 U.S.C. § 153(11)) and a "telecommunications carrier" (47 U.S.C. § 153(51)), which provides "personal wireless services" (47 U.S.C. § 332(c)(7)(C)(i)) and "interstate and intrastate telecommunications services," as those terms are defined and used in the TCA and the implementing rules, regulations, and orders promulgated by the FCC.  47 U.S.C. § 253.

18. Verizon Wireless provides "personal wireless services," including "commercial mobile services," and its facilities are "personal wireless service facilities," including voice services that allow users of mobile, handheld telephones to place and receive calls to other mobile and landline telephone users through the national, switched telephone network using conventional telephone numbers.  47 U.S.C. §§ 332(c)(7)(C)(i-ii), 332(d)(1).

19. Verizon Wireless is licensed by the FCC to provide interstate and intrastate telecommunications services and personal wireless services via radio communication nationwide, including within the City.

20. Verizon Wireless is also a "telephone corporation," which provides service over

"telephone lines" as those terms are defined and used in the California Public Utilities Code. Cal. Pub. Util Code §§ 233-234.

21. Defendant City of Fresno is a local government entity, duly constituted under the Constitution and laws of the State of California, with the responsibility and authority to process, and to take final action on, personal wireless service facility siting applications in the City.

## V.     EVOLVING CELLULAR TECHNOLOGY AND NEED FOR THE PROPOSED FACILITY

22. To provide reliable service, modern wireless communications require networks of "cell sites," which contain antennas and supporting radio equipment. Demand for wireless services is growing exponentially. Wireless carriers must install new cell sites and upgrade existing ones to provide adequate network capacity to meet that demand and to provide newer, more advanced wireless services.

## VI.    REGULATORY FRAMEWORK

### A.     Federal Preemption of Local Roadblocks to Competition

23. With the passage of the TCA, Congress "created a new telecommunications regime designed to foster competition in local telephone markets." *Verizon Maryland, Inc. v. Pub. Service Comm'n of Md.*, 535 U.S. 635, 638 (2002). To ensure that its pro-competitive national policy would not be frustrated, Congress imposed certain limitations on the traditional zoning authority of state and local governments to regulate the location, construction, and modification of such facilities. *City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013).

24. To ensure that its pro-competitive national policy would not be frustrated, Congress added several provisions to the TCA to reduce or eliminate certain local and state barriers to entry and deployment.

25. Specifically, the TCA provides that, while state and local governments retain their traditional zoning authority to regulate "the placement, construction, and modification of personal wireless service facilities," that authority is subject to several limitations. 47 U.S.C. § 332(c)(7)(B)(i)-(iv). Among these limitations is the express requirement that a state or local

government must "act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time* after the request is duly filed . . . ." 47 U.S.C. § 332(c)(7)(B)(ii) (emphasis added).

26. The TCA's "reasonable period of time" standard is important because it requires prompt action by state and local governments in reviewing an application seeking approval of personal wireless service facilities. It also affects the limitations period within which a party aggrieved by "any final action or failure to act" on such an application may seek judicial review. The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, *within 30 days after such action or failure to act*, commence an action in a court of competent jurisdiction. *The court shall hear and decide such action on an expedited basis*." 47 U.S.C. § 332(c)(7)(B)(v) (emphasis added.)

27. For context, this provision addressed the fact that wireless providers often faced lengthy and unreasonable delays on siting applications, which impeded the deployment of advanced wireless services and capacity, including the provision of emergency services dependent on such capacity.

28. To clarify the meaning of a "reasonable period of time," the FCC issued the "*Shot Clock Ruling*," which established a rebuttable presumption that a "reasonable period of time" is 90 days to process a "collocation" application and 150 days to process all other applications.[1] 24 FCC Rcd. at 14005, 14012, ¶¶ 32, 45.

29. In *City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013), the United States Supreme Court upheld both the statutory authority of the FCC to interpret the "reasonable period of time" provision, and the reasonableness of the presumptive 90-day and 150-

---

[1] Under the *Shot Clock Ruling*, a "collocation" application is any application that does not involve a new tower or a "substantial increase in the size of a tower." *Shot Clock Ruling*, 24 FCC Rcd. at 14012, ¶ 46; 47 C.F.R. § 1.6002(g). In this case, the Proposed Facility is not a "collocation" because it is a new tower. The Proposed Facility is therefore subject to the 150-day deadline under the *Shot Clock Ruling*.

day deadlines. *Id.* at 295; *see also* 47 C.F.R. Section 1.6003(c) (establishing the same presumptively reasonable periods of time).

30. One of the *Shot Clock Ruling*'s purposes was to "clarify when an adversely affected service provider may take a dilatory State or local government to court," i.e., to clarify when the 30-day limitations period under 47 U.S.C. §332(c)(7)(B)(v) for a failure to act begins to run. The FCC "expect[s] that this certainty will enable personal wireless service providers more vigorously to enforce the statutory mandate against unreasonable delay that impedes the deployment of services that benefit the public." *Shot Clock Ruling*, 24 FCC Rcd. at 14008, ¶ 37.

31. Under the *Shot Clock Ruling*, the presumptive deadlines of 90 days (for collocation facilities) and 150 days (for new towers) will control unless the State or local government rebuts the presumption that such deadlines are reasonable. *Shot Clock Ruling*, 24 FCC Rcd. at 14004-14005, ¶ 32.

32. Otherwise, the presumptive 90-day or 150-day deadline may be extended or tolled under only two circumstances. First, if the State or local government makes a request for additional information within 30 days after the application is filed, the time spent by the project applicant responding to the request does not count toward the 90 or 150-day period. *Shot Clock Ruling*, 24 FCC Rcd. at 14014-14015, ¶ 53; *see also* 47 C.F.R. § 1.6003(d)(2). Thus, if the state or local government entity makes a timely and appropriate request for additional information (within 30 days of the date of filing), the "shot clock" stops running on the date of such request and does not start running again until the requested additional information has been submitted. *Shot Clock Ruling*, 24 FCC Rcd. at 14014, ¶ 52; *see also* 47 C.F.R. § 1.6003(d)(2).

33. Second, the *Shot Clock Ruling* provides that the deadlines may be extended by "mutual consent of the personal wireless service provider and the State or local government, and that in such instances, the commencement of the 30-day period for filing of suit will be tolled." *Shot Clock Ruling*, 24 FCC Rcd. at 14013, ¶ 49.

34. The *Shot Clock Ruling* was intended to "ensure timely State and local government action and . . . . [that municipalities] will have a strong incentive to resolve each application within

7
COMPLAINT FOR DEC. JUDGMENT & INJUNCTION; REQ. FOR EXPEDITED REVIEW

the timeframe defined as reasonable, or they will risk issuance of an injunction granting the application." *Shot Clock Ruling*, 24 FCC Rcd. at 14008-09, ¶ 38; *see also New Cingular Wireless PCS, LLC v. Town of Stoddard*, 853 F.Supp.2d 198, 203-204 (D.N.H. 2012) (finding that "the *Shot Clock Ruling*'s 150–day deadline for the processing of wireless communications facility siting applications encompasses not only the time it takes a local government to reach an initial decision on an application, but the time it takes to complete the rehearing process. . . . as well").

35. Consequently, if a city fails to act within a reasonable period of time on an application by a carrier to place, modify or construct personal wireless service facilities, it violates 47 U.S.C. Section 332(c)(7)(B)(ii).  This failure to act is not cured, nor is the Shot Clock tolled, by an interim decision from the City that is still appealable to another City department.  The City must conclude *all* of its internal processes and appeals by these deadlines so that there is a final decision. *New Cingular Wireless PCS, LLC, supra,* 853 F.Supp.2d at 203-204.

### B. State Law Regulatory Framework

36. The California Legislature has made the timeframes for action under the *Shot Clock Ruling* self-executing.

37. The Government Code provides that an "application for a wireless telecommunications facility . . . shall be deemed approved" if the local government "fails to approve or disapprove the application within a reasonable period of time" as defined by the FCC in its *Shot Clock Ruling*, and all required notice has been provided.  Cal. Gov. Code § 65964.1(a).

## VII. THE CITY VIOLATED THE FCC'S SHOT CLOCK

38. On July 8, 2021, Verizon Wireless submitted a preliminary review application to the City for a permit to install an 80-foot wireless facility camouflaged as a pine tree.  The design included antennas concealed within faux foliage and branches.  The tree pole and associated network equipment would be placed in a 366-square foot concrete block enclosure located at the far end of a parking lot, along with a standby generator to provide continued service during emergencies.  The Proposed Facility would be served by undergrounded power and fiber.

39. Verizon Wireless selected this site to fill a gap in coverage in its service in the

eastern downtown Fresno area and areas east of Highway 41, which includes residential neighborhoods, offices, and commercial developments.  Heavily trafficked Highway 41 and local streets in the gap area also lack reliable in-vehicle coverage.  Further, accelerated growth in both voice and data usage by Verizon Wireless customers has increased the demand on the existing Verizon Wireless network, which compromises network accessibility and reliability.

40. Verizon Wireless's application constituted a "request for authorization to place, construct or modify personal wireless service facilities." 47 U.S.C. § 332(c)(7)(B)(ii).

41. On August 9, 2021, the City issued comments on the preliminary review application, which were not timely and did not toll the Shot Clock.

42.  By an agreement dated December 3, 2021, the City and Verizon Wireless tolled the Shot Clock until February 28, 2022.

43. Then, on December 6, 2021, after incorporating comments from the City, Verizon Wireless filed conditional use permit submittals.

44. On January 18, 2022, the Planning Department provided notice to property owners within 1,000 feet of the Proposed Facility site of the City's Planning and Development Director's intention to act on the Proposed Facility.  Fresno Municipal Code § 15-5007.

45. The City's Project Review Committee for District 3 reviewed the Proposed Facility on January 25, 2022, pursuant to a referral by Planning staff, and voted to recommend approval of the Proposed Facility.

46. The City's Planning and Development Director approved the application on February 24, 2022, four days before the Shot Clock was scheduled to elapse.

47. On or about February 24, 2022, the City provided Notice of Action to property owners who requested to be notified once the Proposed Facility was conditionally approved.

48. On February 28, 2022, the City and Verizon Wireless again executed an agreement agreeing that the Shot Clock expired on February 28, 2022, and that no limitations period under 47 U.S.C. Section 332(c)(7)(B)(v) would commence prior to May 31, 2022.

49. On March 8, 2022, the Huntington Park Condos appealed the City's Planning and

Development Director's decision to the City Planning Commission.

50. The Planning Department mailed notices dated April 7, 2022, regarding the April 20, 2022, Planning Commission hearing to property owners within 1,000 feet of the Proposed Facility.

51. The appeal was scheduled to be heard by the Planning Commission on April 20, 2022, but the matter was continued to May 4, 2022, due to lack of a quorum.

52. On May 4, 2022, the Planning Commission again continued the appeal to May 18, 2022, due to lack of a quorum.

53. Finally, on May 18, 2022, the Planning Commission heard the Huntington Park Condos' appeal and approved the Proposed Facility.

54. On May 31, 2022, District Councilmember Miguel Arias appealed the Planning Commission's approval on behalf of District 3 residents.

55. Per the February 28, 2022, tolling agreement, the limitations period under 47 U.S.C. Section 332(c)(7)(B)(v) commenced on May 31, 2022.

56. The City has not yet scheduled District Councilmember Miguel Arias' appeal to be heard by the City Council, but they have stated that July 21, 2022, is the earliest available hearing date.

57. On June 27, 2022, Verizon Wireless sent the City a deemed approval notice under California Government Code Section 65964.1.

58. As of the date of this filing, the City has not responded to Verizon Wireless's June 27, 2022, deemed approval notice.

59. Not only did the City fail to act on the application for the Proposed Facility by the February 28, 2022, Shot Clock deadline, the City still has not taken final action on that application even today.  Indeed, as of the date of this filing, the City has not even provided Verizon Wireless with notice of when the City Council will schedule a hearing to resolve the most recent appeal.  As such, the Proposed Facility application remains open, pending final action and unresolved, resulting in a presumptively unreasonable delay and in a denial to the public of the benefits of

reliable wireless service.

## VIII. GROUNDS FOR INJUNCTIVE RELIEF

60. As a result of the City's actions (or lack thereof), Verizon Wireless has been, and will continue to be, damaged and irreparably harmed absent the relief requested herein. The harm caused by the City's unlawful actions includes, but is not limited to, impairment of Verizon Wireless's (a) ability to provide its customers in the City with the high-quality, reliable wireless service they desire and rightfully expect; (b) ability to compete with other providers of telecommunications services; (c) full use of its existing licenses and business investments; and (d) good will and business reputation.

61. The harm that the City's actions have caused Verizon Wireless is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

62. Moreover, the public interest in promoting competition, lower prices, and rapid deployment of new technology in the telecommunications arena – the express goals of the TCA – has been irreparably harmed and will continue to be irreparably harmed by the City's unlawful actions. Verizon Wireless's present and future customers, as well as the public at large, are significantly prejudiced by the City's unlawful conduct.

63. In addition, wireless telecommunications are an important component of emergency response systems and provide a vital alternative to traditional land lines during fires, earthquakes, and other natural and man-made disasters. The City's unlawful actions prevent Verizon Wireless from installing equipment needed to address gaps in capacity and coverage and to provide improved service.

64. In contrast to the immediate and irreparable injury being suffered by Verizon Wireless, its customers, and the public interest, the City will suffer no injury if the Court issues the requested declaratory and injunctive relief.

## IX. GROUNDS FOR DECLARATORY RELIEF

65. A present, actual controversy has arisen and now exists between the parties

regarding their respective legal rights and duties. Verizon Wireless contends that the City's actions were preempted by and in violation of the TCA and violate the California Government Code. On information and belief, the City denies these allegations.

66. Accordingly, declaratory relief is appropriate and necessary to adjudicate Verizon Wireless's rights and the City's duties and authority.

### COUNT ONE

**(Violation of 47 U.S.C. Section 332(c)(7)(B)(ii))**
**(Shot Clock Violation)**

67. Verizon Wireless re-alleges and incorporates by reference all preceding paragraphs as if fully restated herein.

68. The acts and omissions of the City as alleged here constitute a violation of 47 U.S.C. § 332(c)(7)(B)(ii) because the City failed to act on Verizon Wireless's request to place, construct or modify personal wireless service facilities within a reasonable period of time. Specifically, the City failed to act on the Proposed Facility within the presumptive deadline, which expired on February 28, 2022. *Shot Clock Ruling*, 24 FCC Rcd. at 14004-14005, ¶ 32.

69. There are no unusual, extraordinary, or extenuating circumstances with respect to the Proposed Facility, or as to the nature or scope of the proposed project, that would justify any delay beyond the presumptive 150-day deadline for action set forth in the *Shot Clock Ruling*.

70. The Proposed Facility complies fully with all permissible zoning, design, and other requirements imposed by the City for applications seeking authorization for the placement, construction, or modification of personal wireless service facilities within the City. The Proposed Facility should have been promptly approved.

71. The 150-day deadline for final City action, which ran on February 28, 2022, takes into account all extensions resulting by operation of law from the City's timely request for additional information regarding Verizon Wireless's application. There have been no additional extensions to the Shot Clock mutually agreed to by the parties.

72. Because of the City's violation of the TCA and the *Shot Clock Ruling*, the Court

should order that the Proposed Facility application be granted or deemed approved.

Accordingly, Verizon Wireless prays for relief as set forth below.

### COUNT TWO

**(Violation of Cal. Gov. Code Section 65964.1)**
**(Deemed Approval)**

73. Verizon Wireless re-alleges and incorporates by reference all preceding paragraphs as if fully restated herein.

74. Separate and apart from any federal remedies, the California Legislature has established a remedy for wireless carriers whereby the carrier may "deem approved" an application for a wireless facility for which a city or county fails to approve or disapprove in a reasonable period of time. Cal. Gov. Code § 65964.1(a)(1).

75. As established above, the deadlines imposed by federal law and applicable FCC decisions for the City to act on the Proposed Facility expired.

76. The City affected all required public notice regarding the Proposed Facility. Fresno Municipal Code §§ 15-5007, 15-5305.

77. On June 27, 2022, Verizon Wireless gave written notice to the City that the reasonable time period established by the *Shot Clock Ruling* had expired, and that the application was deemed approved by operation of law pursuant to California Government Code Section 65964.1(a)(3)(A).

78. The City has not yet responded to Verizon Wireless's notice.

79. Verizon Wireless has satisfied all other requirements for deemed approval of the Application pursuant to California Government Code Section 65964.1(a).

80. Despite receiving all required notice from Verizon Wireless, the City has failed to approve or disapprove the Proposed Facility. The Proposed Facility is therefore deemed approved pursuant to California Government Code Section 65964.1.

Accordingly, Verizon Wireless prays for relief as set forth below.

## X. REQUEST FOR EXPEDITED REVIEW

81. Verizon Wireless re-alleges and incorporates by reference all preceding paragraphs as if fully restated herein.

82. The TCA, 47 U.S.C. § 332(c)(7)(B)(v), provides that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

83. Verizon Wireless has been adversely affected by the City's failure to take final action on the Proposed Facility. Verizon Wireless respectfully requests a hearing and decision by the Court on an expedited basis as provided by the TCA.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Verizon Wireless respectfully requests that this Court enter judgment against the City as follows:

(i) For an Order and Judgment finding and declaring that the City failed to take final action on the Proposed Facility "within a reasonable period of time," in violation of 47 U.S.C. Section 332(c)(7)(B)(ii), the FCC *Shot Clock Ruling*, and 47 C.F.R. Section 1.6003;

(ii) For an Order and Judgment declaring that the Proposed Facility is deemed approved pursuant to Cal. Gov. Code Section 65964.1 and ordering and enjoining the City to issue all other permits and approvals required in order to allow Verizon Wireless to proceed with the Proposed Facility;

(iii) For preliminary and permanent injunctive relief on all Counts, directing the City to grant Verizon Wireless any and all authorizations or approvals necessary to construct the Proposed Facility;

(iv) For expedited review of the matters set forth in this complaint;

(v) For an order awarding Verizon Wireless the costs and disbursements incurred in

1  connection with this action pursuant to 28 U.S.C. § 1920; and

2      (vi)    For an order granting such other relief as this Court considers just and proper.

Dated: June 30, 2022                      MACKENZIE & ALBRITTON LLP

/s/ Melanie Sengupta
Mark Mosley
Melanie Sengupta
Attorneys for Fresno MSA Limited Partnership,
a California limited partnership

COMPLAINT FOR DEC. JUDGMENT & INJUNCTION; REQ. FOR EXPEDITED REVIEW